J-S24042-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| IVAN BENEDITCH, | : | |
| | : | |
| Appellant | : | No. 2982 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 21, 2019
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008006-2017

BEFORE:    BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED SEPTEMBER 11, 2020**

Ivan Beneditch (Appellant) appeals *nunc pro tunc* from his judgment of sentence imposed following his convictions for person not to possess a firearm and false identification to law enforcement authorities.  Upon review, we affirm.

On November 7, 2017, Officer Timothy Coffland responded to a report of an assault of Rachel Thompson at a residence on East 2nd Street in Pottstown, Montgomery County.  N.T., 1/3/2019, at 13.  As Officer Coffland headed to the residence on East 2nd Street, he observed a man, later identified as Appellant, who matched the description of the perpetrator in a parking lot about two blocks away.  *Id.* at 14, 30.  Officer Coffland exited his patrol vehicle and approached Appellant, telling him he was under investigation.  When Officer Coffland asked Appellant for his name, Appellant

---

*Retired Senior Judge assigned to the Superior Court.

replied that his name was Ivan Bernardez instead of Ivan Beneditch, and provided a false date of birth and social security number. *Id.* Appellant told Officer Coffland that he and Thompson had been involved in a verbal argument about their relationship. *Id.* at 16. According to Appellant, Thompson struck him and he grabbed her arms to restrain her. *Id.* Appellant had no visible injuries. *Id.* at 17.

Officer Coffland proceeded to the residence on East 2nd Street and interviewed Thompson. *Id.* at 15. He observed swelling on her neck and a cut. *Id.* Officer Coffland located a loaded, extended magazine Glock 34 9-millimeter pistol and .380 ammunition in the closet of the upstairs bedroom where the incident occurred. *Id.* at 17-18.

Police arrested Appellant and charged him with strangulation and simple assault of Thompson.[1] As they processed Appellant, they discovered that Appellant had provided false information concerning his identity and that he was statutorily prohibited from possessing a firearm based upon his criminal history, and he was charged with person not to possess a firearm and false identification to law enforcement authorities.

Police determined that the firearm was registered to a person named Avery Colclasure. At trial, Colclasure testified that he was the lawful owner of the Glock pistol and he gave it to Thompson for safekeeping while he went

---

[1] The Commonwealth later *nolle prossed* these charges following presentation of its case-in-chief at trial. Thompson did not testify at trial.

out drinking. *Id.* at 35-39. Colclasure said he gave Thompson the gun on November 6, 2017, *i.e.*, the night before Thompson was assaulted. *Id.* at 39. Colclasure denied that he gave Appellant the gun or permission to use the gun. *Id.* at 38. Colclasure confirmed that Thompson lived at the residence on East 2nd Street at the time of the incident, but claimed Appellant lived elsewhere with his aunt. *Id.* at 39, 42.

Colclasure had signed a written statement when he was interviewed at the police station on November 7, 2017, and the Commonwealth introduced it as substantive evidence. *Id.* at 37, 47-55; *see also id.* at Exhibit C-6. In Colclasure's statement, he told police he had given the Glock pistol to Appellant at the residence on East 2nd Street on November 6, 2017, not to Thompson. *Id.* at 50. Colclasure stated that he gave Appellant the pistol for safekeeping while he went out drinking, and Appellant kept the pistol for him regularly. *Id.* Appellant was at the East 2nd Street residence when he gave him the pistol, and to Colclasure's knowledge, Appellant and Thompson both lived there.[2] *Id.*

At the conclusion of a non-jury trial, the trial court convicted Appellant of person not to possess a firearm and false identification to law

---

[2] The Commonwealth also introduced a vital statistics form that Appellant reviewed and signed around the time of his arraignment. The form indicated that his address was the residence on East 2nd Street where the gun was found. *Id.* at 27; *see also id.* at Exhibit C-4.

enforcement. On May 21, 2019, the court sentenced Appellant to an aggregate term of 5 to 10 years' imprisonment.

This notice of appeal followed.[3] Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises one issue on appeal, which is whether the evidence was sufficient to convict him of the crime of person not to possess a firearm where there was insufficient evidence that he possessed a firearm on November 7, 2017, which is the date listed in the bill of information. Appellant's Brief at 3.

Appellant's issue challenges the sufficiency of the evidence supporting his conviction. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Giron**, 155 A.3d 635, 638 (Pa. Super. 2017). Further, to address a challenge to the sufficiency of the evidence, we must determine

---

[3] Through his private trial counsel, Appellant filed an initial notice of appeal, which was docketed in this Court at 1804 EDA 2019. Trial counsel failed to file a docketing statement with this Court, and on August 23, 2019, we dismissed the appeal pursuant to Pa.R.A.P. 3517. New counsel was appointed, and on September 12, 2019, counsel promptly moved to reinstate Appellant's appellate rights *nunc pro tunc*. The motion was granted. Although the trial court did not formally treat it as such, technically this motion was a timely-filed petition for relief pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. **See Commonwealth v. Rizvi**, 166 A.3d 344, 347 n.2 (Pa. Super. 2017) ("[T]he PCRA provides the 'sole means' for obtaining *nunc pro tunc* relief[.]"). Nonetheless, this appeal is properly before us.

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Carr*, 227 A.3d 11, 19 (Pa. Super. 2020). Additionally, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015).

To prove that Appellant was guilty of the crime of person not to possess a firearm, the Commonwealth had to prove beyond a reasonable doubt that Appellant was convicted of a statutorily-enumerated offense and possessed a firearm in this Commonwealth. 18 Pa.C.S. § 6105(a)(1). The only element Appellant contests is whether the Commonwealth proved that he possessed a firearm on November 7, 2017. Appellant's Brief at 8-9. Appellant first points to Colclasure's trial testimony, during which Colclasure testified that he never gave the firearm to Appellant. Appellant next argues that even in the written statement Colclasure provided to police, in which

Colclasure stated that he gave Appellant the gun on November 6, 2017, there is "zero testimony" about any events between Colclasure's handing the gun to Appellant on November 6, 2017, and the police's recovery of the gun from Thompson's closet the next day. *Id.* Appellant stresses that it

> is unclear whether [Appellant] gave the gun to [] Thompson for safekeeping and she put it in her closet or whether [Appellant] put the gun there himself. It is unclear whether [Appellant] slept in that house on the night in question. Surely if [Appellant] were not at [the residence on E. 2nd Street], then he could not be in control of the firearm in the closet at this residence on November 7, 2017. The finder of fact is not permitted to speculate, and only rank speculation places [Appellant] in the [residence] on the day in question.

*Id.*

We begin our analysis by reviewing the law regarding possession. Because Appellant was not in actual possession of the firearm, the Commonwealth needed to prove that he had constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.
>
> [A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items.

- 6 -

>   Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.
>
>   If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa. Super. 2018) (quotation marks and citations omitted).

While the facts in this case are somewhat sparse, we disagree with Appellant's contention that they only add up to "rank speculation." The trial court, as the finder of fact, was "free to believe all, part, or none of the evidence." *Carr*, 227 A.3d at 19. After hearing Colclasure's trial testimony, the trial court, sitting as factfinder, determined his trial testimony was not credible, and found the statement he gave to police to be credible. Trial Court Opinion, 11/18/2019, at 5. In his statement, Colclasure told police he gave Appellant the gun on November 6, 2017, at the East 2nd Street residence, and he gave it to him for safekeeping while Colclasure went out to drink, as he had done on several other occasions. He further told police that Appellant and Thompson both lived at the East 2nd Street residence. On November 7, 2017, police responded to an assault call at the East 2nd Street residence around 10:30 a.m. and found Appellant two blocks away from the residence. Appellant denied assaulting Thompson, but implicitly admitted

being at the residence on the day in question when he claimed that the assault happened the other way around, *i.e.*, that Thompson assaulted him. After proceeding to the residence, police observed Thompson with injuries and found the firearm. The firearm was located in the bedroom of the residence where Colclasure said Appellant lived. Appellant later admitted to living there by signing the vital statistics form without corrections.

Additionally, the Bill of Information in this case avers that Appellant possessed the gun "on or about November 7, 2017." Bill of Information, 3/9/2018, at 1. Rule 560 provides that the Information shall include "the date when the offense is alleged to have been committed if the precise date is known, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient." Pa. R.Crim.P. 560(B)(3). Appellant argues in his brief that it is possible that he received the firearm from Colclasure on November 6, 2017, and handed it off to Thompson before November 7, 2017. Appellant's Brief at 9. Even if that were true, his receipt of the firearm during the evening of November 6, 2017, would be "on or about November 7, 2017." Moreover, there is sufficient evidence in the record to infer that he possessed the firearm on or about November 7, 2017, particularly because the firearm was located in the closet of the bedroom of the shared residence the morning after Colclasure gave it to Appellant for safekeeping. The evidence at trial need not preclude

every possibility of innocence. **Carr**, 227 A.3d at 19. Accordingly, when viewed in the light most favorable to the verdict winner, the Commonwealth has set forth sufficient evidence to support the element of possession under 18 Pa.C.S. § 6105(a)(1).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/11/20